In re AMERICAN CLASSIC VOYAGES, CO., et al., Debtors.

American Classic Voyages, Co., et al., by and Through Paul Gunther, Plan Administrator, Plaintiff,

v.

Kanoa, Inc., d/b/a Body Glove Cruises, Inc., Helicopters Consultants of Maui, Inc., d/b/a Blue Hawaiian Helicopters, Kualoa Ranch Activity Club, Pacific Wings, Maui Bicycle Safaris, d/b/a Maui Down Hill, Hike Maui, PPF Hawaii, Inc., Maui Classic Charters, Inc, Sunshine Helicopters, Island Marine Activities, Fair Wind, Planet Ocean Water Sports, Captain Zodiac Raft Expeditions, Kelii's Kayak Tours, Waialeale Boat Tours, Inc., Roberts Hawaii, Inc., a/k/a Roberts Hawaii Tours, Inc., Carry–All, Inc., Defendants.

Bankruptcy No. 01–10954 (WS). Adversary No. 03–55634 (WS).

United States Bankruptcy Court, D. Delaware.

July 29, 2005.

Francis A. Monaco Jr., Wilmington, DE, for Debtor.

## MEMORANDUM OPINION DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [1]

WALTER SHAPERO, Bankruptcy Judge.

Plaintiff American Classic Voyages, Co. commenced a number of preference avoidance actions against the Defendants, each having a similar fact pattern. As a result, the Defendants [2] filed a Motion for Summary Judgment [Docket No. 19].

The parties have stipulated to certain relevant facts by way of a jointly filed Statement of Undisputed Facts, a copy of which is attached hereto as Exhibit A [Docket No. 44]. The essence of what is involved is that Debtors operated cruise ships, and in the course of doing so, contracted with Defendants to provide its passengers and employees certain off-ship

---

**1.** This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

**2.** The above-captioned adversary proceedings were consolidated by order of the Court [Docket No. 15, March 30, 2004].

excursion activities such as snorkeling, hiking and helicopter tours. Debtors received additional fees for these activities, which it paid Defendants for their services. The Plan Administrator now seeks to avoid those payments as preferential transfers under sections 547 and 550 of the Bankruptcy Code.

Defendants argue in their Motion for Summary Judgment that: (1) the fees paid to them were never property of the estate, but rather trust funds under an applicable Hawaiian statute, and thus cannot be preferential transfers; or alternatively, (2) the fees were received, held and paid by the Debtors as trustees of a common law resulting trust in favor of Defendants, and as such the payments were of the trust property and not property of the estate.

At the close of oral argument, the Court ruled on the record that with respect to the common law resulting trust issue, the request for summary judgment was denied because an evidentiary hearing is required to sort out a number of relevant facts that were not covered by Exhibit A.

As to the statutory trust issue, the Hawaiian state statute, HAW. REV. STAT. 468M–1, *et seq.* (the "Statute"), seeks to comprehensively regulate the provision by an "activity desk" for its customers of services of an "activity provider" (those terms being statutorily defined) by way of registration and annual licensure requirements. The Statute further generally provides: (1) funds collected for the services are to be placed in a trust account out of which payments are to be made to the activity provider, less any sums or commissions due to the activity desk; (2) as an alternative to the establishment of the trust account, a performance bond (or irrevocable letter of credit) meeting specified and detailed statutory requirements can be provided; (3) equitable and legal remedies to

activity providers; (4) various forms of relief to persons suffering damage as a result of violations; and (5) details as to both the maintenance and payments out of the trust accounts.

Given the indicated stipulations of fact and other facts noted herein to which the Court believes there is no genuine material fact dispute, and viewing them, as required, in a light most favorable to the non-moving party, the Court believes one of the questions before it can be decided as a matter of law.

If Defendants are to prevail on the statutory trust issue, they must establish that the Statute applies to Debtors, *i.e.,* that the Debtors come within the statutory definition of an "activity desk" and are not the subject of any statutory exception therefrom. The Statute defines an "activity desk" as:

> Any ... corporation ... which for compensation or other consideration, acts or attempts to act as an intermediary to sell, contract for, arrange, or advertise that it can or will arrange, or has arranged, activities which are furnished by an activity provider. This chapter shall not apply to any hotel as defined under 486K–1, ....

HAW. REV. STAT. § 468M–1. There can be little doubt that Debtors, as a cruise ship owner and operator, fit within the basic definition of an "activity desk," which is couched in language sufficiently clear and unambiguous as to preclude any reference to any legislative history as to what the legislature had in mind when it passed this statute that might be seen as limiting its applicability, for instance, to travel agencies.

Debtors argue, however, that it fits within the "hotel" exception [3] to the Statute because as a cruise ship it is a "build-

---

**3.** Haw.Rev.Stat. 486K–1 provides, in pertinent part:

"Hotel/Hotel-condo" means an establishment consisting of any building or structure

ing or structure used primarily for the business of providing for consideration transient accommodation lodging facilities," HAW. REV. STAT. 486K–1, and that notwithstanding the not unreasonable characterization of a cruise ship as nothing more than a "floating" hotel, it is not a "building" or "structure" within the common definitions or usage of those terms, and further, Debtors business is not "primarily" the provision of lodging facilities, but rather it is primarily the business of traveling from one place to another. This is a substantial and reasonable argument, the merits of which, however, the Court need not decide in light of the grounds upon which the Court is going to base its decision.

The persons or entities involved here are: (1) the cruise ship passenger or employee who has signed up for an excursion; (2) the activity desk, *i.e.*, the Debtors as cruise ship owner and operator; and (3) the activity provider, *i.e.*, the direct provider of the snorkeling, hiking, helicopter tours, etc. Under the Statute it is clear that the potential trustee would be the Debtors. There is a considerable question, however, as to who among the others are the intended beneficiaries. Another substantial question arises as to whether a trust ever came into existence by reason of the Debtors having supplied the alternately provided for performance bond.

For the reasons hereinafter set forth, the Court concludes that: (1) the intended beneficiaries of any trust created under the Statute are the consumers who paid money to the activity desk, and not the activity providers; and/or alternatively, (2) a trust never came into existence by reason of the supplying of the performance bond, and thus the fees paid to the Defendants, the return of which is sought by the preference actions, were in fact monies of the bankruptcy estate.

■ As to the first question, the Court relies primarily upon the language of the Statute itself, which states: "The trust account required by this section shall be established and maintained for the benefit of the consumers paying money to the activity desk," HAW. REV. STAT. 468M–9(b), and "The bond or letter of credit shall be issued by a surety or federally insured lending institution authorized to do business in the State to indemnify any consumer who may suffer loss as a result of nonperformance by an activity desk." HAW. REV. STAT. 468M–10(b). Additionally, section 468M–3 bans various practices, including: "Withdrawing any funds of a consumer from a client trust account . . . ." HAW. REV. STAT. 468M–3(4). The use of the term "client" in front of the term "trust account" throughout the Statute seems to refer to the activity desk's customers, in this instance, the Debtors' passengers.[4]

---

used primarily for the business of providing for consideration transient accommodation lodging facilities and that furnishes, as part of its routine operations, one or more customary lodging services, other than living accommodations and the use of furniture and fixtures, including, but not limited to, restaurant facilities, or room attendant, bell, telephone switchboard, laundering, or concierge services, . . . .

4. The Hawaii Administrative Rules further support the legal conclusion that the clients are the intended beneficiaries of the Statute. Haw. Admin. Rules, Title 16, Chapter 117, *available at* http://www.hawaii.gov/dcca/main/har/. The Statute empowers the Director of the Hawaiian Department of Commerce and Consumer Affairs to adopt those rules necessary for the effective administration of the Statute. HAW. REV. STAT. 468M–17. Pursuant to that directive, the Hawaii Administrative Rules provide, in relevant part: "The trust account required by this section shall be established and maintained for the benefit of the consumers paying money to the activity desk." Haw. Admin. Rules, § 16–117–25(c). No mention is made of the activity providers being an additional intended beneficiary of the trust account.

It is true that as a result of setting up either the trust account or supplying the performance bond, a degree of protection is also afforded the activity providers, and in furtherance of such, the activity provider is in fact provided remedies under various sections of the Statute. Thus, in the broad sense of the term, one could argue that the activity providers benefit from the Statute. However, not everyone who may benefit from such statute is the actual beneficiary of the trust that statute creates. The Statute does a number of things and operates to afford a number of rights, including refunds to customers, damages, etc., and any number of remedies to various involved parties, but with respect to that portion of the Statute that deals with the creation and maintenance of a fiduciary or trust relationship, the legislature's specific language ought to govern. The Statute appears to be intended and designed to insure that consumers get what they paid for, and any benefit accruing to the activity providers is incidental to or a by-product of that primary and clearly expressed intention. There is nothing inherently wrong or inconsistent with setting and limiting the parties to the actual trust relationship and at the same time affording a broader remedies for a class of persons not the actual cestuis que trust for violations of various obligations and rights created under the Statute.

■ There are certain practical problems if the activity providers were to be considered as the actual or additional beneficiaries of the statutory trust. Suppose this was not a preference action dealing with funds already paid out, but a situation where at the time of the filing the bankruptcy petition the debtor had not set up the indicated trust account, but rather had a substantially co-mingled bank account and had provided a performance bond, and the issue arose as to whether or not the activity providers could claim some part of the co-mingled funds. Putting aside all of the identification, tracing and allocation issues, would the question and the proper result be any different under the Statute, or is the difference that the identification, tracing and allocation issues preclude a result in favor of the activity providers, even if they were considered beneficiaries of the trust? In that situation, what about consumers who paid the monies to the debtor and had not received the contracted for services and their right to a refund out of those same monies? Given that the Statute appears to contemplate the setting up of only one trust account, notwithstanding the likely fact that there will be numerous consumers who paid varying amounts into the account and many activity providers being paid out of the account, matching at any given time what monies in the account represent what is owed for services already performed and for whom becomes totally problematic. If the activity providers are deemed trust beneficiaries in addition to the consumers, the practical problems would seem to geometrically progress to the point that belies an intent to broaden the concept of who is beneficiary beyond that which the Statute explicitly states—the consumer. The legislature could have constructed the Statute differently, however, in terms of what it has done, the Court concludes that the activity providers are not the actual trust beneficiaries the legislature had in mind, notwithstanding that the legislature did afford them various other remedies not requiring or necessarily emanating from that legal status. Alternatively, the legislature also explicitly stated:

> If a client trust account is not established and maintained as required under section 468M–9, no activity desk shall be permitted to operate in the State unless the activity desk: (1) Posts a bond which is a performance of financial guaranty type bond naming the director as obligee . . . .

HAW. REV. STAT. 468M–10(a). That same section goes on to state that an activity desk whose bond or letter of credit has been cancelled or expires may continue to operate the activity desk provided it establishes the client trust account prior to the expiration or cancellation. HAW. REV. STAT. 468M–10(d).

It is stipulated in this case that the required bond was in effect at all relevant times. Debtors argue that the funds, the return of which the preference actions seek, never became trust funds in the first place because of the existence of that bond. It is also an undisputed fact that no trust accounts were ever created with respect to any monies paid by passengers or employees for the various activities provided by Defendants. Defendants argue that as soon as the funds were received by Debtors, trust account or no, performance bond or no, a trust relationship arose under the Statute between Debtors and Defendants with respect to all of those funds, and therefore payment to Defendants out of the co-mingled account (Debtors' general operating funds as well as funds derived from payment for activities) constituted payment of trust funds that were not property of the estate. Again, and without regard to any tracing or allocation issues, the Court concludes the statutory language should rule the day. The above-quoted language indicates the intent of the drafters was that the provision of a bond was an alternative to, or a substitute for, the very creation of any trust account in the first place, the inevitable logical conclusion of which is that the monies paid never became trust funds. To carry Defendants' argument to its logical conclusion would mean that Defendants were beneficiaries and could assert positions as both trust fund beneficiaries (even in the absence of any such account) and rights or protections under the performance bond. This Court reads the Statute as being either/or, and not both. One can easily

sympathize with the potential plight of activity providers in these situations, but financially caring for or protecting them under legislation such as the Statute is a matter of legislative policy expressed in the words of a statute, with reference to which courts have a limited and solely interpretative function.

Accordingly, Defendants' Motion for Summary Judgment is denied.